(Hamilton Co., Court of Common Pleas.)

No. 113,766. GEORGE MATHERS et al, Plaintiffs, v. JAMES E. BULL, Defendant.

and

No. 113,770. SAME v. SAME.

and

No. 113,771. ANNA B. MATHERS, Plaintiff, v. SAME.

---

Tax laws exacting forfeitures are classed with penal laws in Ohio, and must be strictly construed.

The county treasurer is protected by law in discharging his duty as he understands it, process for sale of property for delinquent taxes in apparently due form of law having been given.

Under sec. 2864, R. S., the county auditors of Hamilton and Cuyahoga counties have to advertise delinquent tax sales between the 20th of December and the first Monday in February, and sec. 2870 instructs the treasurer of Cuyahoga county to begin the delinquent tax sale on the first Tuesday of February, and all other county treasurers on the third Tuesday in January. There is no exception in favor of the treasurer of Hamilton county. A legislative intent can not be construed into this section authorizing the treasurer of Hamilton county to sell the lands of delinquent tax payers at any day succeeding the cessation of the advertisement. Where it therefore appears that the lands in question were sold by the treasurer of Hamilton county on the first Monday in February, the sale is clearly invalid.

In a suit by the owner to quiet his title to property sold at a delinquent tax sale, the costs will be assessed against the purchaser at such sale, when a legal tender of the amount due has been properly made to the tax buyer.

---

SPIEGEL, J.

These three suits were brought by plaintiffs May 14, 1898, for the purpose of quieting their title to lands sold at delinquent tax sale on February 1, 1897, by the County Treasurer, to J. E. Bull, plaintiffs alleging that said tax sale was illegal for numerous reasons stated in said petitions. Numerous preliminary skirmishes were had, the defendant denying his ownership of said tax certificates, until the case was finally tried November 17, 1898.

The chief question involved in this case has narrowed down to the single proposition: Was the sale of delinquent lands, made by the treasurer of Hamilton county on the first Monday of February, 1897, a legal sale, or not? The answer to this query depends upon the construction to be given to sections 2864 and 2870 of the Revised Statutes of our State.

The first section named originally provided that each county auditor should cause the list of delinquent land in his county to be published weekly for two weeks between the 20th day of December and the third Tuesday in January next ensuing; and attached to this section was the form of the notice to be published, stating, among other things, that the county treasurer would sell said delinquent land at the court-house on the third Tuesday of January.

Section 2870 originally provided that the county treasurer or his deputy should attend at the court-house on the third Tuesday in January, and then and there proceed to sell.

On April 18, 1892, (vol. 89, O. L., p. 395) the general assembly amended section 2864 by inserting: "Except in counties containing a city of the second grade of the first class, (Cleveland) in which such list shall be published between the 20th day of December and the first Tuesday in February;" did not amend the notice attached to said section, which still read that said lands would be sold by the county treasurer on the third Tuesday of January next; but proceeded further to amend section 2870 by inserting a provision that in counties containing a city of the second grade of the first class, (Cleveland) the sale of lands should begin on the first Tuesday of February.

Section 2870 has remained thus to this day.

On February 9, 1893, section 2864 was again amended (90 O. L., p. 26), changing "Except in counties containing a city of the second grade of the first class in which such list shall be published between the twentieth day of December and the first Tuesday in February" to "except in counties containing a city of the first grade of the first class (Cincinnati), in which such list shall be published between the 20th day of December and the first Monday in February," again leaving the notice unchanged.

On January 10, 1894, section 2864 was again amended (91 O. L., p. 1) by changing a city of the first grade of the first class to "except in counties containing a city of the first or second grade of the first class", thus including Cincinnati and Cleveland in the excepted classes, and again leaving the notice unchanged, and leaving unchanged in both the latter amendments substituting and. including Cincinnati in section 2864, the section 2870, which always provided, since the amendment of 1892, (vol. 89), "that in counties containing a city of the second

grade of the first class, (Cleveland) the sale of lands shall begin on the first Tuesday of February," entirely omitting Cincinnati, and making the beginning of the sale in the excepted class not the first Monday, but the first Tuesday of February.

That we have to do here with a piece of slovenly law-making, such as the amendment of the attachment law last winter, goes without doubt, and the court, by reason thereof is confronted with the problem of construing a law in which every tax payer is vitally interested.

Two forms of construction are known to the law,—a liberal construction, and a strict construction. Two classes of statutes are liberally construed,—remedial statutes, and statutes which conserve the public good or the general welfare. But penal statutes have always been strictly construed. And by strict construction is meant a close and conservative adherence to the literal or textual interpretation. A remedial statute, not clear as to any proposed application, admits of resort to many rules of construction to determine what the courts are authorized to assume is 'the meaning and intention of the law maker; but a statute which must, on account of its subject or nature, be construed strictly, must be read without expansion beyond its letter, without recourse to any such rules; it is to be confined to such subjects or applications as are obviously within its terms and purpose. This is the rule laid down by all modern text writers, and approved by our best courts.

Keeping this in view, a number of citations urged upon the court by counsel, will be found to be applicable to cases within the rule of liberal construction, and not of strict construction. and will be found not to be applicable to this case, if the subject matter of the laws to be construed, to-wit: Delinquent tax sales, place them within the category of penal statutes.

Counsel for defendant has cited Judge Cooley upon this question, and I can do no better than repeat what this eminent jurist has said upon this question:

"The general rules of interpretation require this in the case of statutes which may divest one of his freehold by proceedings not in the ordinary sense judicial, and to which he is only an enforced party. It is thought to be only reasonable to intend that the legislature, in making provision for such proceedings, would take unusual care to make use of terms which would plainly express its meaning, in order that ministerial officers might not be left in doubt in the exercise of unusual powers, and that the citizen might know exactly what were his duties and liabilities. A strict construction in such cases is reasonable, because presumptively the legislature has given in plain terms all the power it has intended

should be exercised. It has been very generally supposed that the like strict construction was reasonable in the case of tax laws. Mr. Dwarris in his treatise on Statutes has the following remarks:

"Statutes made for the advancement of trade and commerce, and to regulate the conduct of merchants, ought to be perfectly clear and intelligible to persons of their description. By the use of ambiguous clauses in laws of that sort, the legislature would be laying a snare for the subject, and a construction which conveys such an imputation ought never to be adopted. Judges, therefore, where clauses are obscure, will lean against forfeitures, leaving it to the legislature to correct the evil, if there be any.' "

This rule thus laid down by the most eminent authority, has been followed by all writers, and adopted by the courts of nearly every state. As the court says in Dean v. Charlton, (27 Wis., 522):

"A due regard for individual rights and the plainest principles of justice requires that taxing statutes shall have only the effect which the legislature clearly intended; in construing them all reasonable doubts as to such intent should be resolved in favor of the citizen."

The same rule has ben laid down by our Supreme Court. In Woodward v. Sloan, 27 Ohio St., 592, the court says:

"Lands cannot be claimed as forfeited to the state for non-payment of taxes without a strict compliance with the statutes authorizing the forfeiture."

See further Magruder v. Esmay, 35 Ohio St., 221.

In White v. Woodward et al., 44 Ohio St., 347, the court determines that tax laws must be construed strictly.

And in Estabrook v. Royon, 52 Ohio St., 321, the court says:

"We see no reason why the same strictness should not be required to work a forfeiture of a life estate for the non-payment of taxes, under provisions of section 2852, Revised Statutes, as is required to work a forfeiture to the state, or to support a title acquired on a sale of delinquent lands."

And on page 324:

"And it is these considerations that have uniformly influenced the courts to apply the law with great strictness where forfeitures are claimed. They are odious in law, because they necessarily work a sacrifice of the rights of the party whose estate is forfeited. Where equity may relieve, the sacrifice is less; but where, as in this case, it cannot, and nothing but the pound of flesh will satisfy the demand, it is the duty of courts to see that all the requirements of the law have been complied with."

Thus it will be seen that tax laws, exacting forfeitures, are classed with penal laws in our state, and must be strictly construed. In other words, they must be read without expansion beyond its letter,

and without recourse to the equitable rules of interpretation permitted to the court in the construction of remedial statutes. Following this rule, we find that section 2864 permits the county auditors in Cuyahoga and Hamilton counties to advertise the delinquent lands for tax sale between the 20th day of December and the firs Monday in February, and that section 2870 instructs the treasurer of Cuyahoga county to begin the delinquent tax sale on the first Tuesday of February, and all other county treasurers on the third Tuesday in January. There is no exception in favor of the treasurer of Hamilton county. Can I, then, construe a legislative intent into this section, authorizing the treasurer of Hamilton county to sell the lands of delinquent tax payers at any day succeeding the cessation of the advertisement? That is the only construction I could possibly give section 2870, for if I were to construe sections 2864 and 2870 in pari materia, extending the operation of section 2864, which affects both Cuyahoga and Hamilton counties, to section 2870, I would still be compelled to simply extend the proviso of this section to Hamilton county, and this only provides for the commencement of the sale on the first Tuesday of February. As the testimony before me, however, shows that the lands in question were sold on the first Monday in February, the sale is clearly invalid. But I do not believe that, under the rules cited, I have the power to even adopt this rule of construction. I am bound to adhere strictly to the language of section 2870, which requires no construction, and any remedy for the incongruity between the two sections must be applied by the law making power; not by the judicial. The sale of the lands in controversy was, therefore, invalid, and the purchasers of the tax titles are relegated to their remedy under section 2880, as follows:

"Upon the sale of any land or town lot for delinquent taxes, the lien which the state has thereon for taxes then due shall be transferred to the purchaser at such sale; and if such sale should prove to be invalid on account of any irregularity in the proceedings of any officer having any duty to perform in relation thereto, the purchaser at such sale shall be entitled to receive from the proprietor of such land or lot the amount of taxes, interest, and penalty legally due thereon at the time of such sale, with interest thereon from the time of payment thereof, and the amount of taxes paid thereon by the purchaser subsequent to such sale; and such land or lot shall be bound for the payment thereof."

Although, perhaps, in the nature of a dictum, I desire to say here, that the county treasurer is protected by law in thus discharging his duty as he understood it, process for sale in apparently due form of law having been issued to him.

[COPYRIGHT, 1899, BY CARL G. JAHN.]

This is not only essential to the protection of public officers, but is absolutely required for the due dispatch of public business.

I come now to the question of the payment of costs in these cases. The petitions were filed May 14, 1898. The testimony shows conclusively that a legal tender was made to Mr. J. E. Bull, at Worthington, Ind., by Messrs Fox and Mathers, of the amount of the taxes, with interest and penalty, to the day of the sale, and with interest on the total sum to the day of tender. Mr. Bull then admitted that he was the owner of the tax certificates, but in his answers filed in these suits he denies that he was the owner on the day the petitions were filed. I find, however, from the testimony, without going into its details, that Mr. Bull was the owner of these certificates when the suits were brought, and that the different transfers occurred afterwards, thus bringing its present owners within the rule of lis pendens.

The judgment of this court is, therefore, that the costs of these suits be paid by the defendant, Mr. J. E. Bull, and that the title of plaintiffs to these lands be quieted upon payment by them to the owners of the tax certificates as disclosed by their answers, of the amount of the tender, and also the amount subsequently paid for taxes, if any, and a judgment entry may be drawn accordingly.